UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-3560-CIV-UNGARO-BENAGES

CAROLE ROSE HAMMETT, on
behalf of herself and all others
similarly situated
      Plaintiffs,

vs.

AMERICAN BANKERS
INSURANCE CO. OF FLORIDA
and AMERICAN BANKERS
LIFE ASSURANCE COMPANY
OF FLORIDA,
      Defendants.

_____/



**ORDER DENYING MOTION
FOR CLASS CERTIFICATION**

     THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification (DE 41)

filed February 28, 2000, Defendants' Motion for Leave to File Sur-Reply to Plaintiff's Reply

Memorandum (DE 56), filed April 3, 2001, and Plaintiff's Motion for Leave to Respond to

Defendants' "Surreply" in Opposition to Motion for Class Certification (DE 57), filed April 12,

2001.

     THE COURT has considered the Motions, the pertinent portions of the record and is

otherwise fully advised in the premises.  For the reasons explained below, Plaintiff's Motion will

be denied.

## BACKGROUND

     This case concerns the Defendants' administration process for paying the minimum monthly

payment to credit cardholders ("the Insureds") who have purchased Involuntary Unemployment

Insurance ("IUI") from Defendants. Plaintiff's First Amended and Restated Class Action Complaint

("the Complaint") alleges that Defendants issued IUI policies to thousands of consumers, using

standard, uniform applications in which the Defendants represented that they would make "the

minimum monthly payment on Your account" in the event of "involuntarily loss of employment." Compl. ¶ 10. Rather than making the minimum monthly payment in its Insureds' accounts as it had represented, Defendants allegedly devised a scheme wherein claims were not processed on a timely basis, Defendants failed to pay amounts equal to the Insureds' finance charges plus the credit insurance premiums it automatically charged to the Insureds' accounts, and thereby created self terminating policies.

In December 1995, Plaintiff entered into an insurance policy with Defendants to provide coverage for her Discover credit card payments in the event she became involuntarily unemployed. In March 1996, Plaintiff became involuntarily unemployed and submitted her first claim to Defendants on April 29, 1996. At the time Plaintiff became unemployed and Defendants paid her first claim, her balance was approximately $900.00. Over the course of the next three and one-half years of her unemployment, Plaintiff's balance increased to approximately $1650.00. In February 1998, the interest rate on Plaintiff's debt increased from 19.8% to 22.4%. Additionally, Plaintiff incurred late fees and over limit charges at various times while her policy was in effect.

Plaintiff seeks class action status on behalf of "[a]ll persons in the United States who entered into involuntary unemployment insurance agreements with Defendants, or either of them, since September 22, 1996." Motion at 3.

## DISCUSSION

To maintain a class action, Plaintiff bears the burden of showing that the proposed class satisfies the four prerequisites of Federal Rule of Civil Procedure Rule 23(a). Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable ("numerosity"), (2) there are questions of law or fact common to the class ("commonality"), (3) the claims of the representative are typical of the claims of the class

("typicality"), and (4) the representative parties must fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a). If the prerequisites are met, then the action must satisfy one of the three provisions of Rule 23(b). In making this determination, the Court must take the factual allegations of the Complaint as true and examine only whether those factual allegations meet the requirements of Rule 23.

It is well settled that a court is not to conduct a preliminary inquiry into the merits of a suit when deciding whether it may be maintained as a class action. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974) (stating "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met" (quoting *Miller v. Mackey Int'l*, 452 F.2d 424, 427 (5th Cir. 1971))). However, a court may look beyond the allegations of the complaint in assessing whether a motion for class certification should be granted. *See General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "It is inescapable that in some cases there will be overlap between the demands of Rule 23(a) and (b) and the question of whether plaintiff can succeed on the merits." *Huff v. N.D. Cass Co.*, 485 F.2d 710, 714 (5th Cir. 1973) (en banc); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000)), *cert. denied, Zeirei Agudath Israel Bookstore v. Avis Rent-A-Car Sys., Inc.,* 121 S. Ct. 1354 (2001).

Indeed, the Supreme Court has noted as follows:

> Evaluation of many of the questions entering into determination of class action questions is intimately involved with the merits of the claims. The typicality of the representative's claims or defenses, the adequacy of the representative, and the presence of common questions of law or fact are obvious examples. The more complex determinations required in Rule 23(b)(3) class actions entail even greater entanglement with the merits.

*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.12 (1978) (quoting 15 C. Wright, A. Miller, &

E. Cooper, Federal Practice and Procedure § 3911, p. 485 n.45 (1976)).

A. Rule 23(a) Prerequisites

    1. Numerosity

    The first requirement is that the class is so numerous that joinder is impracticable, not impossible. Rule 23(a)(1); *see Kreuzfeld, A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991). Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion. *See, e.g., Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038-39 (5th Cir. 1981). Plaintiffs have identified thousands of individual class members from all over the country. There is no definite standard as to the size of a given class, and Plaintiff's estimate need only be reasonable. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986). Classes as small as 25 have been certified. *Kreuzfeld*, 138 F.R.D. at 599 (certifying class of 130). Plaintiff estimates that thousands of persons are potential members of this class. In light of the fact that Defendants challenge numerosity in a footnote and Plaintiff has alleged a class of thousands, the Court finds numerosity exists.

    2. Commonality

    Rule 23(a)(2) requires the presence of at least *one* issue affecting all or a significant number of proposed class members. *Kreuzfeld*, 138 F.R.D. at 599. Where, as here, the allegations involve a common course of conduct by the Defendants, class members' claims involve common questions of law or fact. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). This case involves common questions of fact with respect to the standardized or form policies Defendants had with the putative class members and the manner in which the Defendants conducted their administrative activities. Compl. ¶ 58. Accordingly, the commonality element is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the representative's claims or defenses are typical of the claims or defenses of the class. In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class. *Kornberg v. Carnival Cruise Lines*, 741 F.2d 1332, 1337 (11th Cir. 1984). The class representative's claims are typical if her claim and those of the class arise from the same event or pattern or practice and are based on the same legal theory. *Id*. Typicality, however, does not require identical claims or defenses. A factual variation will not render a class representative's claims atypical unless the factual position of the representative markedly differs from that of other members of the class. *Id*.

Defendants contend that the typicality element is not met because Plaintiff Hammett is subject to unique defenses and individualized issues based on her cardholder agreement and claim history. Typicality, however, is not defeated by specific defenses or counterclaims to the named plaintiff's claim. *Ingram v. Joe Conrad Chevrolet*, 90 F.R.D. 129, 131 (E.D. Ky. 1981); *see also Chandler v. Southwest Jeep Eagle*, 162 F.R.D. 302, 308 (N.D. Ill. 1995) (defense).

Plaintiff alleges that she and the proposed class members were subject to the same pattern of fraudulent conduct and suffered damages arising out of the same violations of federal and common law, and breach of contract. *See, e.g.,* Compl. ¶¶ 13-15 (scheme to make payments late ), ¶ 21 (scheme to make payments of less than the minimum monthly payment required by the creditor and in breach of the insurance policies and their representations to Plaintiff and the class members), ¶ 26 (scheme to terminate the policy). Although the factual position of the class representative differs in relevant respects from other members of the putative class, as will be discussed further below, the Court is not persuaded that these differences rise to the level necessary to defeat the

typicality element.  In this regard, Plaintiff is typical insofar as she alleges that her claims and those of the putative class arise from the same involuntary unemployment insurance policy and pattern and practice of making insufficient minimum payments.  Compl. ¶ 37.  Notwithstanding variations in each Insured's cardholder agreement and claim history, if as Plaintiff alleges, Defendants paid an amount less than the minimum monthly payment on the accounts of Plaintiff and the putative class members each month due to an illegal scheme and common course of conduct, Plaintiff's claims are typical of the class members.  Thus, the Court is not persuaded that each class members' unique factual circumstances, undermine Plaintiff's typicality.

 4. Adequacy

 Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representative has no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987).  Plaintiff's counsel are experienced in class action litigation, including federal RICO.  Defendants object only to Hammett's adequacy as class representative, contending that she has failed to make an "evidentiary demonstration of her adequacy as a class representative." Defs.' Oppo. at 13.  Hammett has no divergent interests which are antagonistic to the interest of the Class.  Accordingly, the Court finds that both counsel and the proposed class representative Hammett satisfy the adequacy requirement.

B.  Rule 23(b) Requirements

 Rule 23(b) allows the action to be maintained as a class action if the Rule 23(a) prerequisites are satisfied, and one of the three requirements of Rule 23(b) are satisfied.  Plaintiff seeks certification of a "hybrid" class under Rule 23(b)(2) for declaratory, liability and injunctive purposes and, if the Defendants are found to have committed actionable misconduct under a claim that would

permit monetary damages, class certification under Rule 23(b)(3) for purposes of proving the amount

of damages.[1] Pla. Reply at 2. Thus, Plaintiff proposes for the Court to certify this action under Fed.

R. Civ. P. 23(b)(2) for declaratory, liability and injunctive purposes, allow the parties to proceed

with discovery, and postpone ruling on certification under 23(b)(3) until a determination is made

regarding Defendants' liability *vel non* and the propriety of declaratory and injunctive relief. The

Court will consider Plaintiff's proposal below.

    1. Rule 23(b)(2) Class

    Rule 23(b)(2) certification is warranted when the defendant "has acted or refused to act on

grounds generally applicable to the class, thereby making final injunctive or declaratory relief

appropriate." Fed. R. Civ. P. 23(b)(2). It is well-settled that declaratory or injunctive relief must

be the predominant remedy requested for the class. *Murray v. Auslander*, 244 F.3d 807, 812 (11th

Cir. 2001). Rule 23(b)(2) certification is not warranted where, notwithstanding a request for

injunctive or declaratory relief, the predominant relief requested is monetary. *Id.*; *Allison v. Citgo

Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998); *Holmes v. Continental Can Co.*, 706 F.2d 1144,

1155 (11th Cir. 1983). "[Rule 23(b)(2)] does not extend to cases in which the appropriate final relief

relates exclusively or predominantly to money damages." Advisory Committee Note to 1966

Amendment to Fed. R. Civ. P. 23(b)(2). *See also Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685,

690 (11th Cir. 1987) (stating "[c]ertainly, Rule 23(b)(2) was not applicable, as the suit [claiming

ERISA violations, breach of contract, negligence, unjust enrichment, and conversion] seeks more

---

[1] The Court notes that Plaintiff's Motion for Class Certification only sought certification under Rule 23(b)(3). However, Plaintiff argues for hybrid certification under 23(b)(2) and (b)(3) in her Reply Memorandum. Because Plaintiff presented new arguments and a new theory for certification in her Reply the Court will grant Defendants' Motion for Leave to File a Sur-Reply and Plaintiff's Motion for Leave to File a Response to Defendants' Sur-Reply.

than just the injunctive and declaratory relief generally available under that provision"). "[M]onetary relief predominates in (b)(2) class actions unless it is *incidental* to requested injunctive or declaratory relief." *Murray*, 244 F.3d at 812 (quoting *Allison*, 706 F.2d at 415). In *Murray*, the Eleventh Circuit cited to *Allison* for the specific criteria to determine whether monetary damages are incidental to equitable relief:

> By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claim forming the basis of the injunctive or declaratory relief . . . . Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established . . . . Liability for incidental damages should not . . . entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Murray*, 244 F.3d at 812 (quoting *Allison*, 151 F.3d at 415).

The injuries remedied through Rule 23(b)(2) actions are really group, as opposed to individual remedies. *Holmes*, 706 F.2d at 1155 n.8. The members of a (b)(2) class are generally bound together through "preexisting or continuing legal relationships" or by some significant common trait such as race or gender. *Id.*

Plaintiff seeks a declaration that Defendants' policies, procedures and administration of the IUI policies violates RICO and breaches its policies of insurance with Plaintiff and the putative class members. Compl. ¶¶ 61, 62(ii), (iii). Plaintiff maintains that the legality *vel non* of Defendants' administration of the IUI policies would most appropriately be determined by a declaratory judgment, and if Plaintiff prevails, an injunction prohibiting Defendants from continuing their current administration process that allegedly fails to timely pay the minimum payment due.[2]

---

[2] For the purposes of Plaintiff's motion, the Court will assume that injunctive relief is available under RICO. *Contra Religious Tech. Ctr. v. Wollersheim*, 796 F.2d 1076, 1084 (9th Cir. 1986) (finding Congress did not intend to give private civil RICO plaintiffs access to

Plaintiff is also requesting that the Court order Defendants to perform an accounting to determine the amount they have collected from the IUI policies, including the amount collected as a result of the increases in the putative class members' debt, late fees and over limit fees, and to disgorge this amount to the class.

Having carefully considered the parties' arguments, the Court is unable to agree that the relief and accounting Plaintiff requests is a "group remedy" permitting certification pursuant to Rule 23(b)(2). Plaintiff and the putative class are neither bound together by a legal relationship or a significant common trait and thus lack the class cohesiveness that distinguishes (b)(2) from (b)(3) actions. *Holmes*, 706 at 115-56. Without this unity, there is more likely a need for and interest in individual representation and less likelihood that Plaintiff Hammett can adequately represent the interests of absent members. *Id.*; *Penson v. Terminal Transp. Co.*, 634 F.2d 989, 993-94 (5th Cir. 1981) (stating "[t]he theory underlying the less stringent notice requirements for Rule 23(b)(2) action is that there is purportedly a greater degree of 'cohesiveness or unity in the class' than in 23(b)(3) actions, which minimizes the need for notice and a right to opt out").

The Court acknowledges that in an effort to fall within the scope of Rule 23(b)(2), Plaintiff emphasizes that she "primarily" seeks "a finding and declaration that defendants' misconduct in connection with the IUI scheme violates RICO and state law." Response to Sur-Reply at 4. Plaintiff claims that the monetary relief sought, including compensatory, treble and punitive damages, restitution, attorneys' fees and costs are "incidental" to the equitable relief she requests. However, if Plaintiff proves that Defendants have violated RICO, she will be entitled to recover "threefold the damage [she] sustains and the cost of the suit, including reasonable attorney's fee." 18 U.S.C. §

---

equitable remedies), *cert. denied,* 479 U.S. 1103 (1987); *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 726 (4th Cir. 1999); *In re Fredeman Litig.*, 843 F.2d 821, 830 (5th Cir. 1988).

1964. Likewise, if Defendants are found to be in breach of the insurance polices, Plaintiff will be able to seek disgorgement of the excess fees and charges incurred as a result of Defendants' alleged scheme, as well as compensatory damages for the aggravation, anxiety, dismay and loss of their ability to obtain credit, and punitive damages. Compl. ¶¶ 46-47. Thus, while Plaintiff has an interest in obtaining a declaratory judgment that the Defendants have breached the IUI policies and associated injunctive relief, the predominant nature of the relief she seeks is for money damages. *See Rozema v. Marshfield clinic*, 174 F.R.D. 425, 442 (W.D. Wis. 1997) (stating "[g]iven the possibility of treble damages, injunctive relief is not the predominant form of requested relief"); *Hall v. Burger King Corp.*, Civ.A. No. 89-0260-CIV-KEHOE, 1992 WL 372354, *11, (S.D. Fla. Oct. 26, 1992) (stating "the predominant relief being sought by the plaintiffs is money damages . . . . While plaintiffs attempt to downplay their request for money damages in an effort to fit under the more relaxed requirements of Rule 23(b)(1) or (2) . . . it is almost ludicrous to assert that damages do not predominate"); *Freedman v. Arista Records, Inc.*, 137 F.R.D. 225, 229 (E.D. Pa. 1991) (finding plaintiffs in RICO action sought primarily to recover monetary damages and that their demand for injunctive relief was secondary).

Moreover, assuming that the Plaintiff's and class members' entitlement to damages would flow directly from a finding of liability, the calculation of damages would entail complex individual determinations. In this regard, the reasons why a class member incurred an increase in debt, late fees, increased interest rates, and over limit fees can depend on individual factors. For example, whether a class member was improperly charged for a late fee depends in part on the late fee provision of his or her cardholder agreement and when the putative class member sent in his or her claim. Considering a late fee charge may not be wholly the result of Defendants' alleged scheme to defraud, but may result from other factors, including the actions of the Insured, Plaintiff's

damages are not merely incidental to the equitable relief sought on behalf of the entire class, making certification under 23(b)(2) inappropriate.

Likewise, Plaintiff's breach of contract claim seeks compensatory damages for suffering economic loss, aggravation, anxiety, dismay and loss of their ability to obtain credit, a remedy requiring complex individualized determinations. Compl. ¶¶ 47, 62(vii). Thus, even if Defendants' liability is proven, compensatory damages for breach of contract could not be awarded to the class as a whole. *Murray*, 244 F.3d at 812 (finding district court abused its discretion by certifying Rule 23(b)(2) class when plaintiff sought damages as a remedy for their alleged individual pain and suffering, mental anguish and humiliation because "[a]ssessing damages for these inherently individual injuries compels an inquiry into each class member's individual circumstances").

Finally, certification under Rule 23(b)(2) is inappropriate because it is clear that the declaratory relief sought by Plaintiff is equivalent to a request for a declaration of liability. *Powers v. Government Employees Ins. Co.*, 192 F.R.D. 313, 318 (S.D. Fla. 1998). When "[t]he declaratory judgment count serves the ultimate goal of monetary damages and is designed primarily to facilitate and ensure the satisfaction of monetary relief," class certification pursuant to Rule 23(b)(2) is not appropriate. *Id. See also In re Jackson National Life Ins. Co. Premium Litig.*, 183 F.R.D. 217 (W.D. Mich. 1998) (holding that a request for injunctive relief was merely incidental to a prayer for damages where it was designed to facilitate and ensure the satisfaction of any monetary relief the court might award); *Goldberg v. Winston & Morrone*, No. 95 Civ. 9282 (LAK), 1997 WL 139526, *2-3 (S.D.N.Y. March 26, 1997) (finding certification inappropriate where the purported declaratory relief is tantamount to a declaration of liability for which plaintiffs seek a damages award).

In sum, the putative class members' claims for damages predominate over their claims for equitable relief. Furthermore, assessing entitlement to damages for the putative class will require

11

individualized determinations involving each putative class members' credit cardholder agreements, claims history, and degree of nonpecuniary loss.  Therefore, the Court declines to certify the class under 23(b)(2).

2. Rule 23(b)(3)

Plaintiff also argues for certification of her claim for damages under Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) provides for certification of a class where the prerequisites of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (citation omitted).  "In order to determine whether common questions predominate, '[a] court is] called upon to examine the cause[] of action asserted in the complaint on behalf of the putative class.'" *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234 (11th Cir. 2000) (quoting *McCarthy v. Kleindienst*, 741 F.2d 1406, 1412 (D.C. Cir. 1984)).  "Whether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Id*.  To qualify as a Rule 23(b)(3) class action, "'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1557-1558 (11th Cir. 1989) (quoting *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982)).  "The predominance inquiry focuses on 'the legal or factual questions that qualify each class member's

12

case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods.*, 521 U.S. at 623-24). The most important consideration is the substantive law applicable to the case and the proof which will be necessary to establish the claim. *Anderson v. Bank of the South, N.A.*, 118 F.R.D. 136, 150 (M.D. Fla. 1987).

> a. RICO Claim

The provisions of 18 U.S.C. § 1961, *et seq.* (the RICO Act) provide civil and criminal liability for persons engaged in "a pattern of racketeering activity." *See* 18 U.S.C. § 1962(a-d). Persons injured by reasons of a RICO violation have a civil cause of action under the terms of the act. *See* 18 U.S.C. § 1964. A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes: (1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme. *See Neder v. United States*, 527 U.S. 1, 24-25 (1999); *United States v. O'Malley*, 707 F.2d 1240, 1246-47 (11th Cir. 1983).

Plaintiff argues that her RICO claim should be certified under Rule 23(b)(3) because common questions of law and fact predominate over individual issues of causation and reliance. According to Plaintiff, "[t]his RICO and fraud action involves a scheme by Defendants, through uniform misrepresentations and actionable omissions, to deceive the classes as to the nature of the Policies." Pla. Motion at 11. According to Plaintiff, some of the common questions of law include "[w]hether Defendants' acts violated the standardized or form policies each such defendant had with [the class members]," and "[w]hether Defendants have conspired together and participated in and pursued a common course of conduct and have conspired with respect to the patterns and practices

complained of herein." Motion at 11.  Additionally, Plaintiff points to Defendants' documents to support her contention that Defendants made uniform misrepresentations and actionable omissions. Furthermore, Plaintiff argues that "[c]ommon issues necessarily predominate when the litigation involves a conspiracy, common scheme, or course of conduct that affects all class members similarly." Motion at 12.

Although the Court concludes that Plaintiff has alleged some common questions of law and fact, the record shows that resolution of each class members' claims will require distinctly case-specific inquiries into the facts surrounding each alleged increase in the Insureds' debt, late fees, over limit fees, and increased interest rates. *See Rutstein*, 211 F.3d at 1235; *Jackson*, 130 F.3d at 1005.  Whether Defendants delayed or improperly paid each class members' claims cannot be determined by only considering the legality of Defendants' actions.  Rather, to determine liability and damages the trier of fact also will have to consider each class members' cardholder agreements and claims history.  These and other variables will affect whether a class member has a cognizable injury arising from Defendants alleged scheme to delay or improperly pay each claim.

Defendants also argue that individual questions of causation and reliance preclude a finding of predominance under Rule 23(b)(3) for Plaintiff's RICO claim.  Plaintiff points to cases in other jurisdictions to support her argument that reliance is not an element of RICO claims predicated on mail and wire fraud. *See, e.g., Armco Indus. Credit Corp. v. SLT Warehouse Co.*, 782 F.2d 475, 481 (5th Cir. 1986) (finding reliance is not a necessary element in an RICO action).  According to the Eleventh Circuit, however, "when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1499-1500 (11th Cir. 1991).  *See also Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996) (stating

14

"[e]ven if it could be shown that the appellants were engaged in a scheme to defraud and made misrepresentations to further that scheme, the plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damage"); *Castano v. American Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) (stating that a fraud class action cannot be certified when individual reliance will be an issue) (citing *Simon v. Merrill Lynch*, 482 F.2d 880 (5th Cir. 1973)); *O'Malley v. O'Neill*, 887 F.2d 1557, 1563 n.9 (11th Cir. 1989). In accordance with binding precedent, the Court finds that Plaintiff and the putative class members must each show that they relied to their detriment on Defendants' misrepresentations. This individualized issue of reliance predominates over common issues, thus defeating Plaintiff's certification under Rule 23(b)(3) for her RICO claim.

In making this determination, the Court rejects Plaintiff's alternative argument that even if her RICO and common law claims require proof of a causal connection between Defendants' conduct and Plaintiff's injury, evidence of reliance on the fraudulent act or omission can be resolved on a class wide basis. Plaintiff analogizes the case *sub judice* to *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), where the Supreme Court established a rebuttable presumption of reliance when fraud arises out of material omissions. In *Cavalier Carpets, Inc. v. Caylor*, 746 F.2d 749, 756 (11th Cir. 1984), the Eleventh Circuit reaffirmed that the *Ute* presumption is limited, "applying it only in primarily omission cases in which a duty to disclose existed." *Id.* The Eleventh Circuit did not apply the *Ute* rebuttable presumption in *Cavalier Carpets* because it involved a securities fraud case based on both misrepresentations and omissions. *Id.* at 757.

Although Plaintiff's Complaint and Motion for Class Certification state Defendants made

material misrepresentations and omissions, Plaintiff does not allege any specific omissions.[3] Compl. ¶37. Thus, even when reading the allegations in Plaintiff's Complaint liberally, the Court is not persuaded that this is primarily an omission case of the type contemplated by *Ute*. Accordingly, the Court will not find a rebuttable presumption of reliance on a class wide basis.

Plaintiff also argues in a conclusory fashion that this Court should presume reliance in accordance with cases where "fraud creates the market" for a product. In this regard, Plaintiff maintains that the "breadth and pervasiveness of defendants' scheme . . . has allowed the Policies to enter and remain on the market resulting in greater profit for Defendants." Motion at 15. The fraud-on-the market theory is utilized in securities cases. *See e.g., Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Plaintiff has not cited to any cases to support her argument that this Court should expand this theory to RICO actions. *See Buford v. H & R Block, Inc.*, 168 F.R.D. 340, 359 n.8 (S.D. Ga. 1996) (stating "[t]his Court is convinced that the *Affiliated Ute* presumption of reliance does not reach beyond § 10(b)(5) actions"), *aff'd, Jones v. H & R Block Tax Servs.*, 117 F.3d 1433 (11th Cir. 1997); *In re Ford Motor Bronco II Litig.*, 177 F.R.D. 360, 374 (E.D. La. 1997) (noting "theory of presumptive reliance 'has been generally limited to the securities market'"). Under Plaintiff's RICO theory, each class member would have to demonstrate his or her individual reliance upon the alleged misrepresentations, causing individual, not common, fact issues to predominate.

---

[3] In this regard, Plaintiff Hammett alleges in her Complaint that Defendants misrepresented in their "uniform, written documents . . . that the policy they sold Plaintiff Hammett and the Class Members would make the 'minimum monthly payment' on their accounts in the event they became involuntarily unemployed." Compl. ¶ 37.

This is in contrast to Plaintiff's Reply Memorandum which does not argue that Defendants' made misrepresentations. Rather, Plaintiff states: "Plaintiff's claims in this case are predicated upon a pattern and nationwide course of business consisting of material omissions by the defendants regarding IUI policies, thus permitting an inference of presumption of reliance thereon, thus negating the need of proof of individual reliance at least at the class certification stage." Reply at 3.

b. Breach of Contract

Plaintiff also seeks certification under 23(b)(3) for her state law breach of contract claim. Plaintiff alleges, *inter alia*, that Defendants breached their insurance polices by delaying payments to the credit card company, Am. Compl. ¶ 13, requiring their insured to submit a claim form each and every month, *id.* ¶ 15, refusing to accept claim forms that are filed before the due date of the next billing period, *id.* ¶ 16, and paying less than the minimum monthly payment required by the creditor, *id.* ¶ 21.

To make the findings required to certify a class action under Rule 23(b)(3), the Court must identify the substantive law issues which will control the outcome of the litigation. *Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 316 (5th Cir. 1978). "A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions." *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir.1996); *Andrews v. AT&T.*, 95 F.3d 1014, 1024 (11th Cir. 1996). Plaintiff argues in a conclusory fashion that Florida law is likely to apply to this claim because the common injury in this case occurred in Florida in that all the payments for IUI policies were made to Defendants in Florida. *See e.g., Renaissance Cruises, Inc. v. Glassmani*, 738 So. 2d 436, 438 (Fla. Dist. Ct. App. 1999).

Defendants argue that Plaintiff's state law claim will require adjudication under the laws of many states and thus defeat the predominance of other common issues. The Court agrees. It is well established in Florida that matters bearing on execution, validity, interpretation and obligations of contracts are determined by the law of the place where the contract is made, whereas matters connected with performance are regulated by the law of the place where the contract by its terms may have been provided. *Brown v. Case*, 80 Fla. 703, 86 So. 684 (1920); *State-Wide Ins. Co. v.*

17

*Flaks*, 233 So. 2d 400 (Fla. Dist. Ct. App. 1970); *Charles L. Bowman & Co. v. Erwin*, 468 F.2d 1293

(5th Cir. 1972); *Center Chem. Co. v. Avril, Inc.*, 392 F.2d 289 (5th Cir. 1968). Although the parties

may disagree regarding whether Plaintiff's breach of contract claim relates to the interpretation or

performance of the contract, in either case the laws of other states will be implicated. In this regard,

the Court will apply the law of the state where the last act necessary to complete the contract was

made, or where performance was due. *See Trumpet Vine Inves., N.V. v. Union Capital Partners I,*

*Inc.*, 92 F.3d 1110, 1119 (11th Cir.1996) (stating a contract is created where the last act necessary

to complete the contract is made); *Scudder v. Union National Bank*, 91 U.S. 406, 412 (1875)

(declaring that "for the purposes of payment, and the incidents of payment," the law of the place of

performance is controlling). Considering adjudication of Plaintiff's breach of contract claim will

require consideration of the laws of many states, Plaintiff has failed to establish predominance.

Additionally, Defendants contend that whether the putative class members' policies were

"improperly paid" in breach of their policies implicates the individual cardholder agreements, the

insurance policies,[4] and the comprehensive insurance regulatory scheme in the state of each putative

class member. Defendants have filed a "Claim Handling Matrix Credit Unemployment Claims"

citing to the credit insurance statutes of each of the fifty state that govern when an insurer is required

to provide claim forms, reply to communications, accept or deny claims, and make payments of

---

[4] For example, Plaintiff's insurance policy was issued under a Certificate of Insurance
for CreditSafe Plus that Defendants filed with the Mississippi Commissioner of Insurance.
Plaintiff's policy provides, "[t]he terms of this policy which are in conflict with the statutes of
the state where this Policy is issued, are amended to agree with those statutes." Compl. Ex. B at
2. Thus, to determine whether Defendants have breached Plaintiff Hammett's policy, the Court
will have to consider the law of the state where Hammett's policy was issued, the terms of the
insurance policy filed with that state's department of insurance, and whether the terms of the
policy are in conflict with this state law. This provision requires the Court to construe state law
and amend the policy if there is a conflict.

claims. It is apparent from this matrix that there is little uniformity with respect to the state laws governing whether Defendants are in breach.

Although Plaintiff bears the burden of "prov[ing] through extensive analysis that there are not material variations among the law of the states for which certification is sought," *Powers*, 192 F.R.D. at 318-19, Plaintiff has not provided any analysis to assist the Court in this regard or to refute Defendants' contention that her breach of contract claim implicates state insurance law. Accordingly, the Court finds that Plaintiff has not met her burden of showing that common questions of law predominate. *See id.* (stating "[i]f a plaintiff fails to carry his or her burden of demonstrating similarity of state law, then certification should be denied"). Consequently, certification of a class under Rule 23(b)(3) arising from Defendants alleged breach of contract is in appropriate.

In addition to predominance, Rule 23(b)(3) requires the Court to find that a class action is both the superior method of adjudicating the claims and is manageable. Plaintiff asserts that a class action is superior because individual plaintiffs have little incentive to pursue their rights in court. The Court is not persuaded. As stated above, if Plaintiff succeeds on the merits of her RICO claim, she is entitled to treble damages and attorney's fees, a recovery that could total in the thousands of dollars. *See Andrews v. AT&T*, 95 F.3d 1014, 1025 (11th Cir. 1996) (noting "that even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs").

Furthermore, for the reasons discussed above, the Court finds that the proposed class action is unmanageable. Fed. R. Civ. P. 23(b)(3)(D). Resolution of liability and damages will require an individualized inquiry into each class members' credit cardholder agreements, claims history, and circumstances, as well as variations in applicable state law and insurance regulatory schemes. These manageability problems defeat the underlying policies of achieving economies of time, effort and

19

expense and render these claims inappropriate for class treatment under Rule 23(b)(3). *See Andrews* 95 F.3d at 1025.

    3. Hybrid Class Certification

    Plaintiff moves for hybrid certification on the ground that a court may certify a class for declaratory and injunctive relief under Rule 23(b)(2) and a damages class under Rule 23(b)(3). *Davis v. Southwestern Bell*, No. 89-2839, 1993 WL 593999, *7 (S.D. Fla. Dec. 23, 1993), *reconsideration granted on other grounds*, 158 F.R.D. 173 (S.D. Fla. 1994). By moving for hybrid certification, Plaintiff is attempting to avoid Rule 23(b)(2)'s requirement that the injunctive and declaratory relief sought predominate over the money damages, and Rule 23(b)(3)'s requirement that common issues predominate over individual determinations. For the reasons explained above, Plaintiff has failed to meet the requirements of certification under either Rule 23(b)(2) or (3). Moving for hybrid certification does not change this result. As the Eleventh Circuit stated, "the polices underlying the requirements of (b)(3) should not be subverted be recasting and bifurcating every class suit for damage as none for final declaratory relief of liability under (b)(2), followed by a class suit for damage under (b)(3)." *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983).

## CONCLUSION

    Accordingly, the Court concludes that the requirements for a class action certification pursuant to Fed. R. Civ. P. Rule 23 have been not met. Plaintiff's proposal for hybrid certification fails under Rule 23(b)(2) and (b)(3). It is hereby

    ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification is DENIED. It is further

    ORDERED AND ADJUDGED that Defendants' Motion for Leave to File Sur-Reply is

GRANTED.  It is further

ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to Respond to Sur-Reply

is GRANTED.

DONE AND ORDERED, in chambers, Miami, Florida, this __19__ day of November, 2001.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided
counsel of record